No. 12493

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

FRED WALKER, BRIA V. HOLJE et al.,

Plaintiffs and Respondents,

-vs-

JUNIOR W. TSCHACHE,

Defendant and Appellant.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

Landoe and Gary, Bozeman, Montana.
Joseph Gary argued, Bozeman, Montana.

For Respondent:

James H. Goetz argued, Bozeman, Montana.
Gregory O. Morgan argued, Bozeman, Montana.

---

Submitted: April 30, 1973

Decided: MAY 16 1973

Filed: MAY 16 1973

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an original proceeding brought by Junior W. Tschache seeking a writ of supervisory control, or other appropriate writ, after a judgment rendered in the district court of the eighteenth judicial district, county of Gallatin. The district court, as well as Fred Walker and fourteen other parties are respondents.

In late February 1973 petitioner, owner of the Wagon Wheel Park, a trailer park located in Bozeman, Montana, gave notice to his tenants, respondents herein, that he was going to increase the trailer park rent from $35 per month to $50, such increase to be effective April 1, 1973. The notice to each respondent tenant was in writing, placed in an envelope addressed to the tenant, and deposited in the mail box of the addressed tenant.

Some of the tenants felt the increase was not fair and refused to pay. For the purpose of discussing the necessity of the increase with the owner of the trailer park, the tenants organized a meeting to which all the tenants and the owner were invited. This meeting did not change the positions of the parties. Thereafter the tenant respondents tendered only $35 for their rent, which was refused by the owner. Upon their refusal to pay the rent increase, the owner served these tenants with three day notices of default, intending to follow up with actions for unlawful detainer.

Respondent tenants then filed an action for declaratory judgment in the district court. The court granted a temporary restraining order enjoining further action by the owner and requiring the tenants to post a bond.

Trial without a jury was held on April 13, 1973, at which time fourteen of the fifteen respondent tenants stipulated that they had received the notices more than the statutory fifteen days prior to the effective date of the increase. After presentation of the evidence, the court ordered oral argument on the issue of delivery of notice. At the conclusion thereof, counsel for petitioner

moved and requested the court to rule from the bench; petitioner also waived any right to brief the matter further. In support of his request, petitioner called attention to the fact that the date was April 13 and if notice was insufficient he wanted to know so that he could then attempt to make proper service of notice within the statutory time limit. The court refused petitioner's request and called for briefs and findings of fact from the parties.

On April 18, 1973 the court rendered its findings which held that as a matter of law under section 67-710, R.C.M. 1947, for a landlord to change the terms of a rental agreement from month to month he must serve written notice upon the tenant personally, in a manner in which return could be provided and any other service was inadequate and without effect.

Following that judgment, petitioner made application to this Court for a writ of supervisory control and, in response thereto, an order to show cause was issued to respondents and to the district court. Hearing on the order was held on April 30, 1973.

Two issues are presented for this Court's review: (1) whether this Court, in this situation, should issue an order of supervisory control, and (2) was the service made by the owner on the tenants proper and within section 67-710, R.C.M. 1947?

Respondents argue this is not the proper situation for the issuance of a writ of supervisory control. In support they base their argument on State ex rel. Whiteside v. First Judicial District Court, 24 Mont. 539, 63 P. 395. In the instant case it is apparent there are no factual issues to be argued. The important fact question was stipulated by the parties -- that respondents did receive written notice of the increase prior to fifteen days before the effective date of the increase. There is only a question of law to be determined--was the notice given proper? It is also clear that although this law suit is maintained by only fifteen tenants there are approximately one hundred other tenants whose rights could be affected by a decision that the owner gave improper notice.

Based on these facts, we find this is a proper situation for a writ of supervisory control.

On this question we find clear support for our position in recent cases decided by this Court. In State of Montana v. District Court, 155 Mont. 344, 349,350, 472 P.2d 302, this same argument was presented. The parties there argued that an application for a writ of supervisory control was unwarranted because:

"* * * the remedy by appeal after trial is available and because the petition for supervisory control does not allege circumstances of an emergency nature authorizing intervention by this Court by means of an extraordinary writ."

Of course, the facts in the above quoted case differ from those of the instant case, but the reasoning employed is applicable here. We stated there that a writ should issue, partly because:

"Additional expense to litigants and taxpayers becomes unjustifiable. * * * Under these circumstances the discretionary exercise of supervisory control is both 'necessary' and 'proper' to the complete exercise of an appellate jurisdiction within the meaning of Article VIII, Sec. 3 of the Montana Constitution. It is equally authorized here as 'necessary' and 'proper' supervision of a trial court other than by appeal within the ambit of Rule 17(a) of the Montana Rules of Appellate Civil Procedure."

One of the most recent cases concerning the question of a proper time to issue an extraordinary writ is State ex rel. State Highway Commission v. District Court, _____Mont._____, 499 P.2d 1228, 29 St.Rep. 615. The facts of that case are somewhat similar to the instant case. The question of the case was a question of law, whether the service of process in the action was proper and in accordance with the appropriate statute. That case could also have had an effect on a number of possible lienholders. There we cited earlier Montana cases which discussed the need to prevent extended and needless litigation and the fact that the request for a writ was within a reasonable time after the action sought to be remedied was taken. In that instance we issued the writ, even though the remedy of appeal was available.

Here we find a similar situation, there is no factual dispute only a question of law on the proper service; the decision could

- 4 -

affect the rights of a large number of tenants; and this action will prevent needless litigation. With these circumstances and prior case law upholding our position, we will issue the writ.

The second issue is whether the service of notice upon the tenants was proper and within the statute.

Section 67-710, R.C.M. 1947, provides:

> "Terms of lease may be changed by notice. In all leases of lands or tenements, or of any interest therein, from month to month, the landlord may, upon giving notice in writing at least fifteen days before the expiration of the month, change the terms of the lease, to take effect at the expiration of the month. The notice, when served upon the tenant, shall of itself operate and be effectual to create and establish, as a part of the lease, the terms, rent, and conditions specified in the notice, if the tenant shall continue to hold the premises after the expiration of the month."

Section 67-710 requires "giving notice in writing". Respondents argue that this notice means the same as jurisdictional service, as contemplated by the rules of civil procedure. Under that theory we would be imposing the requirements of service of process for jurisdictional matters upon landlord and tenant notices. This is an attempt to merge the separate concepts of notice and jurisdiction, which the United States Supreme Court has seen fit to separate and hold apart.

In Mullane v. Central Hanover Bank and Trust Company, 339 U.S. 306, 70 S.Ct. 652, 94 L ed 865, 873, the court was faced with the problem of notice requirements. Mullane involved an accounting by the trustee bank for a common trust fund. There were both in-state and out-of-state beneficiaries and the trustee had given notice to both categories only by publication pursuant to a New York statute. In striking down this inadequate form of notice for the in-state beneficiaries, the court defined the due process requirements of notice:

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * The notice must be of such a nature as reasonably to convey the

required information * * * and it must afford a reasonable time for those interested to make their appearance * * *. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied."

Later in Mullane the court said, with reference to giving notice:

"The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."

Applying the above standard to the instant case, there is no doubt the owner was attempting to communicate with or actually inform the tenants of the increase in rent. The means employed was by placing the addressed envelopes in the mail boxes of the tenants. It is clear the tenants were actually notified of the increase; fourteen of the fifteen respondents so stipulated. Their only argument is that this notice is not the same notice required in order to attempt to gain jurisdiction over another. That is not our view of the intent of section 67-710, R.C.M. 1947. The intent of the statute is to inform tenants of an increase in rent, which was done in this instance.

Respondents cite Colyear v. Tobriner, 7 Cal.2d 735, 62 P.2d 741, 745. They argue that case involved a statute which was the pattern for Montana's statute and the interpretation given the statute by the California court should be persuasive in this Court. In discussing the type of service required by the statute, the California court in Colyear said:

"As to the matter of notice, it may be said that where a statute requires notice and does not specify how it shall be given, the presumption is that personal service is required. * * * However, personal service may be made through the instrumentality of the mails. The post office department, as well as any other type of messenger, may be used to effect personal service. Shearman v. Jorgensen, 106 Cal. 483, 39 P. 863; Heinlen v. Heilbron, 94 Cal. 636, 30 P. 8."

Here, the owner utilized a different type of messenger service than the United States Post Office; the notices were delivered by hand to the mail boxes. There is no mandate in the statute, or in the case cited by respondents, which requires service as con-templated in the rules of procedure. It does not follow that by

placing a stamp on these notices and placing them in the mail, as the district court states in its Memorandum, that an otherwise improper service would then meet the statutory requirements.

We hold that the notice required in section 67-710, R.C.M. 1947, does not mean jurisdictional service and that petitioner did serve proper notice upon respondents within the statutory time limit.

Respondents also contend the owner improperly and unlawfully used the mail boxes. Perhaps the federal government has an interest here, but it does not impress this Court as an issue pertinent to whether notice was given and received. While we do not approve of the method used, the tenants stipulated that they in fact received notice in writing, such is sufficient.

We therefore order that the writ issue; the judgment of the district court be annulled; and such further proceedings be had as in the premises required.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.