No. 12519

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

ALFRED BAD HORSE,

Plaintiff and Appellant,

-vs-

JERLYN BAD HORSE,

Defendant and Respondent.

---

Appeal from:  District Court of the Sixteenth Judicial District,
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellant:

Thomas J. Lynaugh argued, Billings, Montana
Kenneth M. Reese, Hardin, Montana

For Respondent:

Kelly and Carr, Miles City, Montana
Thomas K. Schoppert argued, New Town, North Dakota

---

Submitted:  November 26, 1973

Decided:  **JAN - 4** 1974

Filed:  **JAN - 4** 1974

<br>

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from an order of the district court of Rosebud County granting defendant's motion to dismiss for lack of jurisdiction over the person and subject matter of plaintiff's divorce action.

Plaintiff is an enrolled member of the Northern Cheyenne Indian Tribe and resides at Lame Deer, Montana, located within the exterior boundaries of the Northern Cheyenne Indian Reservation. Defendant is an enrolled member of the Three Affiliated Tribes of the Fort Berthold Reservation in North Dakota. The parties applied for and obtained a state marriage license and were married on September 17, 1971, in Forsyth, Montana, which is located outside the boundaries of any Indian reservation. The state district court in Forsyth has been issuing marriage licenses and granting divorces to Indian people since at least 1937, when the Northern Cheyenne Tribal Council accepted and approved a provision in the tribal code which required that all marriages and divorces be consummated in accordance with the laws of the state of Montana.

Plaintiff filed for divorce in the state district court of Rosebud County in December 1972. Defendant was served with process by a state process server on January 24, 1973, in Poplar, Montana, located within the exterior boundaries of the Fort Peck Indian Reservation in Montana. The daughter of the parties was residing with her mother when service of process was effectuated. Plaintiff's complaint asked for custody of such child. After service was made, defendant and her daughter left Poplar, Montana and have been residing within the Fort Berthold Reservation at Parshall, North Dakota.

Defendant filed a motion to dismiss the divorce action on the grounds the state court lacked both subject matter and personal jurisdiction in the matter. The district court in its findings of fact and conclusions of law issued on March 20, 1973,

- 2 -

granted the motion to dismiss on both counts. From this order, plaintiff appeals.

Two issues are presented for review:

1) Do Montana courts have subject matter jurisdiction over a divorce action involving an Indian couple living within the boundaries of an Indian reservation?

2) Is an Indian defendant who was served with process on the Fort Peck Reservation beyond the personal jurisdiction of the state's courts?

The first issue is the principal issue in this appeal. Defendant's position is that (1) Montana has not acted pursuant to federal statute in order to assume civil jurisdiction within the Northern Cheyenne Reservation, (2) an assumption of subject matter jurisdiction in this case would severely restrict self-government by the Northern Cheyenne Tribe, (3) access to state courts because Indians are citizens of the state is not a transfer of subject matter jurisdiction, and (4) a denial of subject matter jurisdiction is not a denial of equal protection of the laws. Along with several federal cases defendant cites three particularly relevant and recent Montana cases: Kennerly v. District Court, 400 U.S. 423, 91 S.Ct. 480, 27 L ed 2d 507; Crow Tribe v. Deernose, 158 Mont. 25, 487 P.2d 1133; Blackwolf v. District Court, 158 Mont. 523, 493 P.2d 1293.

We do not believe that these decisions cited above by defendant in support of her position warrant such a broad application. These cases were distinguished in State ex rel. Iron Bear v. Iron Bear, ____Mont.____, 512 P.2d 1292, 30 St.Rep. 482, a recent opinion of this Court accepting jurisdiction of an Indian couple seeking a divorce in the courts of this state. (We note that Iron Bear was decided after the district court's order here.)

Defendant maintains that a denial of subject matter jurisdiction is not a denial of equal protection of the laws because federal law prohibits state courts from assuming jurisdiction of civil actions involving Indians which arise on an Indian Reservation

- 3 -

except as provided by federal law. Gourneau v. Smith, (N.D. 1973), 207 N.W.2d 256. More specific is the language of Section 402(a) of the Civil Rights Act of 1968, 82 Stat. 73,79, which grants to the states jurisdiction over civil causes of action between Indians. Public Law 90-284, Title IV., §402(a), provides:

> "The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, with the consent of the tribe occupying the particular Indian country or part thereof which would be affected by such assumption, such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State."

In addition it must be noted that the cases relied upon by defendant deal with acts or transactions within the exterior boundaries of the reservation. The parties involved in this divorce proceeding were married outside the Indian reservation in Forsyth, Montana, pursuant to the laws of this state.

The cases cited by defendant deal with arguments concerning tribal self-government and assumption of jurisdiction by the state over the Northern Cheyenne Reservation. Here we are concerned with protecting the equal rights of a person under the Montana Constitution to maintain an action in the courts of this state.

Art. III, Sec. 3, of the 1889 Montana Constitution, this state's equivalent to the "equal protection" clause of the United States Constitution, provides:

> "All persons are born equally free, and have certain natural, essential, and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties, of acquiring, possessing and protecting property, and of seeking and obtaining their safety and happiness in all lawful ways."

- 4 -

Equal protection of the laws of a state is extended to persons within its jurisdiction when its courts are open to them on the same conditions as to others in like circumstances. 16 Am Jur 2d, Constitutional Law, § 533; 1 Antieau, Modern Constitutional Law, § 7:13.

Enrolled members of Indian tribes within Montana are citizens of the United States and citizens of the state of Montana. An Indian is entitled, as any other citizen, to bring an action in the courts of this state. Art.III, Sec. 6, of the 1889 Montana Constitution (Art. II, Sec. 16 of the 1972 Montana Constitution); Section 83-102, R.C.M. 1947; Bonnet v. Seekins, 126 Mont. 24, 243 P.2d 317.

As a general rule an Indian may sue in a state court the same as all other persons, irrespective of race or color, at least with respect to any matter over which Congress has not expressly retained jurisdiction in the United States, particularly if the Indian is a citizen and the matter does not interfere with tribal self-government. 42 C.J.S. Indians § 8; 41 Am Jur 2d, Indians, § 20.

Defendant's position is predicated on the jurisdictional test set forth in Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L ed 2d 251, subsequently applied in Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L ed 2d 573. The Williams test essentially directs its attention to whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them. In McClanahan v. Arizona State Tax Commission, 411 U.S. 164, 36 L ed 2d 129, 93 S.Ct. 1257, the United States Supreme Court pointed out that cases applying the Williams test have dealt principally with situations involving non-Indians. In these situations, both the tribe and the state could fairly claim an interest in asserting their respective jurisdictions. The Williams test was designed to resolve this conflict by providing that the state could protect its interest up to the point where tribal self-government would be affected.

- 5 -

In the instant case, the situation is entirely different. This case involves the respective rights of two reservation Indians in a divorce action in a forum not antagonistic to the tribe, the state, or the federal government. There is no interference with the operation of the tribal court since the Northern Cheyenne Tribal Court has not attempted to exercise jurisdiction over marriage and divorce since 1937. At that time the tribe enacted a provision in its law and order code which has been embodied in the present code, revised in 1966, which reads:

"Chapter 3, Section 1:

"All Indian marriages and divorces must be consummated in accordance with the laws of the State of Montana, except that no common-law marriages shall be recognized within the bounds of the Northern Cheyenne Reservation."

Domestic relations may well be one of those concerns that are peculiar to Indian culture and tradition and best administered by tribal officials who understand Indian marriage and divorce customs although our holding here is not predicated thereon. Here the Northern Cheyenne Tribe has not sought to govern these domestic relations, but rather has left them to the state government by its 1937 enactment and the state has actually exercised jurisdiction since.

Art. II, Sec. 6 of the 1889 Montana Constitution provides:

"Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character; and that right and justice shall be administered without sale, denial or delay."

Section 83-102, R.C.M. 1947, concerning jurisdiction, provides:

"The sovereignty and jurisdiction of this state extend to all places within its boundaries, as established by the constitution, excepting such places as are under the exclusive jurisdiction of the United States".

As stated in Bonnet, reiterated in State ex rel. Kennerly v. District Court, 154 Mont. 488, 466 P.2d 85 (reversed by the United States Supreme Court on other grounds, 400 U.S. 423, 91 S.Ct. 480, 27 L ed 2d 507), and in State ex rel. Iron Bear v. Iron Bear, ___Mont.___, 512 P.2d 1292, 30 St.Rep. 482, the

courts of this state are open to our Indian citizens. As citizens of the state of Montana they are entitled to the protection of our laws and utilization of our courts. As we pointed out in Bonnet, this state and other states have long held that an Indian has the same rights as are accorded any other person to invoke the jurisdiction of the state courts to protect his rights in matters not affecting the federal government.

Recent federal legislation has been specifically enacted to guarantee the reservation Indian the same rights as all citizens. Public Law 280 (Act of 1953), 67 Stat. 589, and the Civil Rights Act of 1968, 82 Stat. 73, while not attempting to culturally assimilate the Indian, are efforts to place the Indian in a legal status similar to that of all citizens, and abolish laws which adversely discriminate against the Indians. To deny plaintiff access to Montana courts here would leave him without a remedy as a practical matter and deny to him that which other persons of this state are entitled under Montana's Constitution.

The second issue concerns the effect of service of process on an Indian defendant within the exterior boundaries of an Indian reservation.

A divorce is generally considered an action in rem as far as it affects the status of the parties but in personam as to other matters. A court may have jurisdiction to grant a divorce even though the defendant has not been served personally in the state and has not appeared in the case.

Service was obtained pursuant to Rule 4, Montana Rules of Civil Procedure. Once the district court has assumed jurisdiction over the subject matter and process has been properly served, the defendant cannot throw up a shield around herself by claiming that the state process server cannot pierce the exterior boundaries of an Indian reservation and serve civil process therein.

In the instant case the marriage "contract" took place off the reservation. There has been no preemption by the federal government which could prevent the transfer of jurisdiction to

- 7 -

the state. There is no disclaimer made and there is no infringement on the right of the tribe to govern itself. Indian country is not a federal enclave off limits to state process servers. Service of process extends to an Indian defendant served within the Fort Peck Reservation. State Securities, Inc. v. Anderson, 84 N.M. 629, 506 P.2d 786.

The myth of Indian sovereignty has pervaded judicial attempts by state courts to deal with contemporary Indian problems. Such rationale must yield to the realities of modern life, both on and off the reservation. As Judge Russell Smith recently observed in United States v. Blackfeet Tribe, (D.C.Mont.), 364 F. Supp. 192, 194:

> "The blunt fact, however, is that an Indian tribe is sovereign to the extent that the United States permits it to be sovereign-- neither more nor less."

Only by throwing off the strictures of Indian sovereignty can state courts enter the arena and meet the problems of the modern Indian. If Congress and the federal appellate courts have a better solution, let them come forward.

Until then, the order of the district court is vacated and the cause remanded to the district court of Rosebud County for further proceedings consistent herewith.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 8 -