No. 81-107

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

IN RE THE MARRIAGE OF

RAYMOND S. LIMPY,

Petitioner and Respondent,

and

JUDITH ROSE LIMPY,

Respondent and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Big Horn.
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

D. Michael Eakin argued, Legal Services, Miles City, Montana
Steven Bunch argued, Legal Services, Helena, Montana

For Respondent:

Clarence T. Belue argued, Hardin, Montana

---

Submitted: September 15, 1981

Decided: November 12, 1981

Filed: NOV 12 1981

*Thomas J. Kearney*

_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The question presented in this case is whether a state District Court in Montana has subject matter and personal jurisdiction over a marriage dissolution action in which both parents and the minor child are enrolled members of the Northern Cheyenne Tribe residing on the Northern Cheyenne Indian Reservation. The District Court held it had jurisdiction. We reverse.

Judith Rose Limpy and Raymond Limpy are enrolled members of the Northern Cheyenne Tribe. They were married on April 15, 1980, in Hardin, Montana, which is located outside the exterior boundaries of the Northern Cheyenne Indian Reservation. The minor child of the parties, Robbie Ray Limpy, and his parents all reside within the exterior boundaries of the Reservation.

On September 10, 1980, Raymond Limpy filed a petition seeking dissolution of the marriage and custody of the minor child in the District Court of Big Horn County. Judith Rose Limpy was served with process within the Reservation and signed an acknowledgement of service. The case came on for trial on October 28 and thereafter the court ordered a home study made by a social worker of Rosebud County, Montana, who recommended both parents as fit and proper custodians of the minor child. Custody of the minor child was awarded to Raymond Limpy by a decree of the District Court, dated March 2, 1981.

Judith Rose Limpy filed a notice of appeal from the District Court's decree raising the sole issue of subject matter and personal jurisdiction of the state District Court.

Appellant wife contends that under the three-part test of State ex rel. Iron Bear v. District Court (1973), 162 Mont. 335, 512 P.2d 1292, the State may not exercise subject matter jurisdiction over domestic relations cases involving Tribal members residing on the Reservation because (1) control of domestic relations is an aspect of sovereignty not withdrawn by treaty or statute, and (2) exercise of State jurisdiction over domestic

- 2 -

relations of Reservation residents is an interference with Tribal self-government. The Tribal Court has exercised jurisdiction in like cases in such a manner as to preempt State jurisdiction.

Appellant wife also maintains that the doctrine of abstention should be followed in domestic relations cases and that this Court should defer to the advisory opinion of the Northern Cheyenne Appellate Court in Wolfblack v. Wolfblack issued June 7, 1979, because it is the Northern Cheyenne Appellate Court's interpretation of Tribal law.

Appellant wife also maintains that the State District Court lacked in personam jurisdiction over her and the minor child because the necessary minimum contacts were not present.

Respondent husband, on the other hand, argues that our decision in Bad Horse v. Bad Horse (1974), 163 Mont. 445, 517 P.2d 893, holding that the State court had subject matter jurisdiction is dispositive of this case. He argues that the only fact distinguishing this case from Bad Horse is the subsequent advisory opinion of the Northern Cheyenne Appellate Court which he argues should not be followed because the Tribal Court has usurped legislative powers reserved to the Tribal Council by the Northern Cheyenne Constitution.

By way of background to our discussion a summary of the advisory opinion of the Northern Cheyenne Court is necessary. A dissolution of marriage action was initiated by Oran Wolfblack in the Rosebud County District Court in 1979. Josephine Wolfblack then filed a petition for dissolution of marriage in the Northern Cheyenne Tribal Court. She appeared in the State District Court and moved to dismiss that action for lack of jurisdiction. The State District Court certified the following question to the Northern Cheyenne Appellate Court:

> "Do Montana District Courts have jurisdiction
> over members of the Northern Cheyenne Tribe,
> residing within the boundaries of that
> reservation, in actions to dissolve marriages?"

The Tribal Court issued its advisory opinion on June 7, 1979, concluding that the Tribal Court has exclusive jurisdiction over divorce actions between Indians living on the Northern Cheyenne Reservation.

The Tribal Court reviewed the Tribal Code and found that jurisdiction over divorces was granted to the Tribal Court by Chapter II, Section 1, which provides:

> "The Tribal Court of the Northern Cheyenne Reservation shall have jurisdiction of all suits wherein the defendant is a member of the Northern Cheyenne Tribe of the Northern Cheyenne Indian Reservation or subject to the Jurisdiction of this court . . ."

The Tribal Court further determined that Montana law was to be applied by the Tribal Court to marriage and divorce cases according to Chapter III, Section 1 of the Tribal Code. The Tribal Court found that any other interpretation of the Tribal Code would conflict with the Tribal Constitution which gives the Tribe the power to regulate the domestic relations of its members. Any purported cession of jurisdiction by the Tribe to the State would violate the Tribal Constitution and the federal statutes controlling jurisdiction, according to the Tribal Court, citing Public Law 280 and the Indian Civil Rights Act, 25 U.S.C. § 1321 et seq. The advisory opinion also discusses the history of the Tribal Code, public policy, and Bad Horse.

We apply the three-part test of State ex rel. Iron Bear v. District Court, supra. Montana has not obtained jurisdiction over the Northern Cheyenne Tribe under the appropriate Acts of Congress, either Public Law 280 or its successor, the Indian Civil Rights Act of 1968, 25 U.S.C. § 1321 et seq. Fisher v. District Court (1976), 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106. While it is not clear, in the light of Fisher, whether the United States Supreme Court would determine that a Tribal enactment prior to 1953 which purports to cede jurisdiction to the State, as is the case here, would be defeated by Public Law 280

- 4 -

or the Indian Civil Rights Act of 1968. Accordingly, we follow our previous determination in Iron Bear that State jurisdiction granted by the Tribe prior to 1953 remains unaffected by those federal statutes until such time as the United States Supreme Court speaks on the subject.

Is the exercise of State jurisdiction over domestic relations of Reservation residents an interference with Tribal self-government? We apply the doctrine of abstention as we did in State ex rel. Stewart v. District Court (1980), ____Mont.____, 609 P.2d 291, 37 St.Rep. 635. Accordingly, we defer to the advisory opinion of Northern Cheyenne Appellate Court holding that the Tribal Court has exclusive jurisdiction over dissolution of marriage actions arising between members of the Tribe residing within the Reservation. We defer to that opinion on the basis of comity believing that the Tribal Court should interpret Tribal law as a matter of policy and that State courts should abstain from interpreting Tribal law to the contrary in cases where the Tribal Court has spoken on the subject. Our 1974 Bad Horse decision is expressly overruled since the Northern Cheyenne Appellate Court advisory opinion has now interpreted Tribal law to the contrary.

Although the Tribal Court has not attempted to exercise jurisdiction in this case, it has exercised jurisdiction in like cases indicating a disposition to preempt State jurisdiction. This Court has been assured by the attorney for Legal Services that the Tribal Court of the Northern Cheyenne Tribe is functioning in this area and thus providing a forum for tribal members to adjudicate domestic relations disputes so no vacuum exists in the jurisdiction of the Tribal Court in domestic relations cases. No reason exists as a matter of policy why this Court should assume jurisdiction to the exclusion of the Tribal Court. If there were no Tribal forum, it is difficult to see how the exercise of jurisdiction by a State court would infringe on

Tribal self-government. See Sherick, State Jurisdiction Over Indians as a Subject of Federal Common Law: The Infringement-Preemption Test (1979), 21 Ariz.L.Rev. 85. This is essentially the same conclusion reached by this Court in Little Horn State Bank v. Stops (1976), 170 Mont. 510, 555 P.2d 211, where the Crow Tribe had provided no means of enforcing a State Court judgment and until it did there would be no interference with Tribal self-government by the exercise of State jurisdiction in that area.

In view of our holding on subject matter jurisdiction, we need not reach the question of personal jurisdiction over Judith Rose Limpy and the minor child.

In summary, we have applied the doctrine of abstention as a matter of comity with the Northern Cheyenne Tribe. Sound public policy requires that the Tribal Courts should have the jurisdiction to interpret their Tribal Constitution and Tribal law where the Indian Tribe has established a functioning forum for themselves to adjudicate controversies affecting the custody of their children. There is no basis for the State to assume jurisdiction that would interfere with Tribal self-government.

The judgment of the District Court is reversed and the cause remanded to that court with directions to enter judgment in accordance with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____

_____

Justices