**Richard B. SANDERS, Plaintiff–Appellant,**

v.

**John ROBINSON, individually and as Tribal Judge of the Northern Cheyenne Tribal Court, the Northern Cheyenne Tribe, at Lame Deer, Montana, Defendants–Appellees,**

and

**Laura Lonebear, Defendant–Intervenor–Appellee.**

No. 87–4192.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 6, 1988.

Decided Nov. 30, 1988.

Amended Dec. 8, 1988.

*duct that presents a serious potential risk of physical injury to another.* (Emphasis added).

Richard B. Sanders, Nester, Cal., pro se.

D. Michael Eakin, Montana Legal Services Ass'n, Billings, Mont., for defendant/intervenor/appellee.

Calvin L. Wilson, Lame Deer, Mont., for defendants/appellees.

Before FLETCHER, BOOCHEVER, and TROTT, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant Richard B. Sanders and defendant-intervenor Laura Lonebear were married in Montana. They resided on the Northern Cheyenne Indian Reservation. Lonebear is a member of the Northern Cheyenne tribe; Sanders is a non-Indian. The couple has three children, who are members of the tribe. In 1982, Lonebear filed an action for divorce in the Northern Cheyenne Tribal Court. Sanders was served with process, and appeared in the tribal court for the sole purpose of objecting to that court's jurisdiction over him. Sanders did not appear on the merits. On December 10, 1982, a tribal judge issued a decree dissolving the marriage, awarding custody and child support to Lonebear, and dividing the couple's property. Sanders filed this action in federal district court challenging the tribal court's jurisdiction to dissolve the marriage. The district court granted summary judgment in favor of the defendants, holding that the tribal court's exercise of jurisdiction was proper.[1]

---

1. This case has had a long and tortuous history. The district court initially found federal question jurisdiction to decide whether the tribal court's exercise of jurisdiction over Sanders was proper, and found in favor of tribal jurisdiction. The Ninth Circuit affirmed in an unpublished disposition on the grounds that there was no federal question jurisdiction. The Supreme

## STANDARD OF REVIEW

Summary judgment is reviewed de novo to determine whether the substantive law was correctly applied. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). The material facts in this case are not in dispute.

## JURISDICTION

The district court had jurisdiction over the question of tribal court jurisdiction under 28 U.S.C. § 1331. *National Farmers Union Insurance Cos. v. Crow Tribe*, 471 U.S. 845, 853, 105 S.Ct. 2447, 2452, 85 L.Ed.2d 818 (1985).[2] Sanders timely appealed the district court's final order granting defendants summary judgment.

■ Appellees raise a mootness argument, which is also jurisdictional. Many parts of the tribal court decree are no longer subject to dispute. Sanders has remarried, and thus cannot be heard to challenge the validity of the decree dissolving his prior marriage. Sanders has, however, challenged the custody and child support decrees. The original decree was vacated in substantial part by the Northern Cheyenne Appellate Court and remanded to the tribal court. It does not appear from the record that the rehearing has yet taken place. The tribal court has retained jurisdiction over Sanders, and has yet to issue a final decree. Sanders will be subject to state enforcement of any decrees issued by the tribal court on remand. Thus, Sanders' appeal is not moot.

## DISCUSSION

### I. The Tribal Court has Jurisdiction

■ The precise issue confronting this court is whether the tribal court has juris-

diction over a non-Indian defendant in a divorce and custody proceeding involving a couple and their children all of whom resided on the reservation during the marriage. This is an issue of first impression in this circuit. We have found no authority in other circuits addressing the issue.

■ Tribal authority is inherent in the tribes' retained sovereignty; it does not arise by delegation from the federal government. *United States v. Wheeler*, 435 U.S. 313, 328, 98 S.Ct. 1079, 1088–1089, 55 L.Ed.2d 303 (1978). In civil cases arising between Indians, or *against* an Indian defendant in an action arising in Indian country, tribal jurisdiction usually will be exclusive. *Fisher v. District Court*, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); *Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 272, 3 L.Ed.2d 251 (1959). The precise scope of a Tribal court's jurisdiction over non-Indian defendants is less clear. The Supreme Court has stated:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over *non-Indians on their reservations*, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealings, contracts, leases, or other arrangements.

*Montana v. United States*, 450 U.S. 544, 565, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981) (emphasis added). "Civil jurisdiction over such [non-Indian] activities [on reservation lands] presumptively lies in the trib-

Court vacated and remanded, 472 U.S. 1014, 105 S.Ct. 3472, 87 L.Ed.2d 609 (1985), in light of *National Farmers Union v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), which had squarely held that § 1331 jurisdiction exists to determine the limits of tribal court jurisdiction, but requires exhaustion of tribal remedies.

Sanders appealed the original tribal court decree to the tribal appellate court. That court upheld the exercise of tribal jurisdiction, but remanded the custody determination and property division in order to correct due process violations in the first proceeding. Sanders re-

filed in federal district court, which found the issue of tribal court jurisdiction to be ripe for decision, and again held in favor of the tribal court on defendant's motion for summary judgment.

2. Appellees argue that federal courts lack jurisdiction because this is a "domestic relations" case. This argument is meritless. The primary issue in this case does not concern the parties' marital status. Rather, the federal question presented concerns the propriety of tribal jurisdiction over a non-Indian.

al courts unless affirmatively limited by a specific treaty provision or federal statute." *Iowa Mutual Ins. Co. v. La Plante*, 480 U.S. 9, 18, 107 S.Ct. 971, 978, 94 L.Ed. 2d 10 (1987) (tribal court should be given the opportunity to determine its own jurisdiction before recourse to federal court). Tribal courts have consistently been recognized as appropriate forums for the adjudication of disputes affecting important personal and property interests of Indians and non-Indians. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65, 98 S.Ct. 1670, 1680–1681, 56 L.Ed.2d 106 (1978).

Two leading treatises on Indian law have assumed that tribal courts would have at least concurrent jurisdiction in divorce cases involving an Indian plaintiff and non-Indian defendant, where the non-Indian defendant resided on the reservation during the marriage. W. Canby, *American Indian Law* 146 (1981) (referring specifically to divorce jurisdiction); F. Cohen, *Handbook of Federal Indian Law* 342 (1982 ed.) (civil jurisdiction generally).

We can continue our analysis by assuming that there must be at least one court with jurisdiction to hear Lonebear's divorce action. Federal courts traditionally refuse jurisdiction over marriages and divorces. *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858). Jurisdiction must therefore lie in state or tribal court, or in both concurrently. We do not reach the question of whether tribal jurisdiction is exclusive. It will suffice for purposes of this disposition for us to hold that the tribal court can at least exercise concurrent jurisdiction.

### A. Tribal Law Permits This Case to be Heard in Tribal Courts

A frequent bar to tribal court jurisdiction over non-Indian defendants has its source not in federal or state law, but in the tribal codes themselves. Many tribal codes provide for civil jurisdiction over *defendants* only when they are Indian. The Northern Cheyenne Constitution gives the Tribal Council power "to regulate the domestic relations of members of the Tribe and of non-members married into the Tribe." Art. III, § 1(p). Chapter II, § 1 of the Northern Cheyenne Law & Order Code authorizes jurisdiction over defendants who are "subject to the jurisdiction" of the tribal court. The Northern Cheyenne Appellate Court has held (in this same case) that these provisions permit tribal court jurisdiction over a non-Indian married to an enrolled member of the tribe. That court's interpretation of tribal law is binding on this court. *Cf. Marriage of Limpy*, 195 Mont. 314, 636 P.2d 266 (1981) (state court so bound). However, a federal court must still, under § 1331, decide whether a tribal court has asserted its jurisdiction beyond lawful limits. *National Farmers Union Ins. Cos.*, 471 U.S. at 853, 105 S.Ct. at 2452.

### B. Montana Has Not Sought to Preempt Tribal Court Jurisdiction

Although the Northern Cheyenne Law & Order Code, Ch. 3, § 1, provides that Indian marriages and divorces must be consummated in accordance with Montana law, this is not a grant of jurisdiction to the state. The Montana Supreme Court has declined to accept jurisdiction on this basis. *Marriage of Limpy*, 195 Mont. 314, 636 P.2d 266 (1981). Nor does the fact that the couple was married off the reservation affect the result. *Id. See also Fisher v. District Court*, 424 U.S. 382, 390 n. 14, 96 S.Ct. 943, 948 n. 14, 47 L.Ed.2d 106 (1976) (per curiam) ("In a proceeding such as an adoption, which determines the permanent status of litigants, it is appropriate to predicate jurisdiction on the *residence* of the litigants rather than the location of particular incidents of marginal relevance, at best.") (emphasis added). In effect, the tribal code simply incorporates Montana law as tribal law. Montana has not asserted jurisdiction over the Northern Cheyenne pursuant to 25 U.S.C. § 1322 (states can exercise civil jurisdiction over tribes with tribal consent).

It does not appear that Montana has sought to exercise exclusive jurisdiction in cases such as this,[3] and thus this court has

---

3. In *McCrea v. Busch*, 164 Mont. 442, 524 P.2d 781 (1974), the state court accepted jurisdiction

little to guide us in evaluating the state interests at stake. Where jurisdiction over non-Indians is sought, both the tribe and the state can claim an interest in asserting their respective jurisdictions. The state can protect its interest "up to the point where tribal self-government would be affected." *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 179, 93 S.Ct. 1257, 1266, 36 L.Ed.2d 129 (1973).

The Montana Supreme Court has held that the exercise of state jurisdiction over the domestic relations of reservation residents could be an interference with tribal self-government. *Marriage of Limpy,* 195 Mont. 314, 636 P.2d 266, 269 (1981). The expressed policy of that court is to defer jurisdiction to the tribal court when tribal law provides the rule of decision and the tribal court has sought jurisdiction. *Id.*[4]

## II. Sanders' Remaining Claims

■ Sanders has requested this court to declare the original tribal court decree of Judge Robinson null and void, on the ground that Judge Robinson's federal conviction barred his ability to sit as a tribal judge. *See* Ch. I, § 3, Northern Cheyenne Law & Order Code. The validity of Judge Robinson's decree is a moot issue. The bulk of his decree in this case was remanded by the Northern Cheyenne Appellate Court. The only part of his decree remaining in effect is the dissolution decree. The Northern Cheyenne Appellate Court held that, given the applicable standards, dissolution was properly granted in this case. Since Sanders has remarried, he cannot be heard to complain over the decree of disso-

lution. Thus there remains no cognizable issue over Judge Robinson's decree.

■ Sanders also asserts that his due process rights were violated in the course of the original dissolution proceedings. Any claim of due process violations (other than a petition for habeas corpus) must be asserted under the Indian Civil Rights Act, 25 U.S.C. §§ 1301 *et seq.* Sanders is limited to pursuing relief under that Act in tribal court. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 59–72, 98 S.Ct. 1670, 1677–1684, 56 L.Ed.2d 106 (1978).

The crux of Sanders' due process complaint involves notice deficiencies in the original tribal court proceeding. These deficiencies were corrected by the Northern Cheyenne Appellate Court. Thus, Sanders' due process rights under the I.C.R.A. have in fact been protected.

## III. Conclusion

The tribal court had jurisdiction over this marriage dissolution action between an Indian plaintiff and a non-Indian defendant residing on the reservation. Appellant's other challenges to the original tribal court decree are moot in light of his remarriage and the intervening reversal and remand of the initial proceeding by the Northern Cheyenne Appellate Court.

The decision of the district court is AFFIRMED.

---

over a wrongful death action brought by an Indian plaintiff against a non-Indian defendant arising out of an accident on the reservation. There was no implication that such jurisdiction would be exclusive.

In *Milbank Mutual Ins. Co. v. Eagleman,* 705 P.2d 1117 (Mont.1985), the state court declined jurisdiction over civil litigation between an Indian and non-Indian arising out of conduct on the reservation. Although it was the defendant who was an Indian, placing the case within the doctrine of *Williams v. Lee,* the court placed no reliance on this fact.

The record indicates that several lower state courts have given effect to the tribal decree in this case.

**4.** A holding that the tribal court does not have jurisdiction in this case could lead to anomalous results. Under *Williams v. Lee,* if Sanders had sued his wife for divorce, he would have been compelled to sue in tribal court. If the tribal court lacked jurisdiction where Lonebear was the plaintiff, she would be compelled to bring *her* suit in state court. Mutually exclusive forums would thus be required depending on which spouse chose to file the action. This court is hesitant to introduce forum-shopping concerns into a spouse's decision to file for divorce.