The NORTHERN CHEYENNE TRIBE OF the NORTHERN CHEYENNE INDIAN RESERVATION, et al., Plaintiffs-Appellants,

v.

Thomas Ralph ADSIT, et al., Defendants-Appellees.

Nos. 79–4887, 80–3028, 80–3032, 80–3038, 80–3040 to 80–3042, 80–3044, 80–3045 and 80–3061 to 80–3063.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1981.

Decided Feb. 22, 1982.

As Amended April 5, 1982.

Thomas Pacheco, Dept. of Justice, Washington, D. C., for U. S.

Jeanne S. Whiteing, John E. Echohawk, Boulder, Colo., Calvin Wilson, Busby, Mont., for Cheyenne Tribe.

R. Anthony Rogers, John Michael Facciola, Glenn P. Sugameli, Wilkinson, Cragun & Barker, Washington, D. C., Thomas J. Lynaugh, Lynaugh, Fitzgerald, Schoppert & Skaggs, Billings, Mont., for Crow Tribe and The Confederated Salish & Kootenai Tribes.

Reid Peyton Chambers, Sonosky, Chambers & Sachse, Washington, D. C., for Assiniboine and Sioux Tribes, intervenors.

Steven L. Bunch, Montana Legal Services Ass'n, Helena, Mont., for Bowen.

Helena S. Maclay, Deirdre Boggs, Bruce McEvoy, Missoula, Mont., Bert W. Kronmiller, James E. Seykora, Douglas Y. Freeman, Hardin, Mont., for State of Mont.

Cale Crowley, Crowley, Haughey, Hanson, Gallagher & Toole, Maurice R. Colberg, Jr., Hibbs, Sweeney, Colberg, Jensen & Koessler, Billings, Mont., for numerous defendants-appellees.

Before MERRILL, CHOY and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

The United States government and various Montana Indian tribes appeal the dismissal of consolidated actions brought to adjudicate federal and Indian water rights in Montana. The federal court actions were dismissed in favor of state court proceedings. Dismissal was predicated on the Supreme Court's decision in *Colorado River Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (hereinafter "*Akin*"). Because *Akin* was erroneously applied to the facts of the Montana litigation, we reverse.

## I. PROCEDURAL HISTORY.

In January, 1975, the Northern Cheyenne Tribe brought suit in United States District Court for the District of Montana to adjudicate water rights in the Tongue River and Rosebud Creek in Montana. Jurisdiction was alleged under 28 U.S.C. § 1362.[1] In March, 1975, the United States brought suit pursuant to 28 U.S.C. § 1345 [2] for the same purpose, in its own right and as fiduciary on

---

1. 28 U.S.C. § 1362 provides:

 The district courts shall have original jurisdiction of all civil actions brought by any Indian tribe ... wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

2. 28 U.S.C. § 1345 provides:

 [T]he district courts shall have original jurisdiction of all civil actions or proceedings commenced by the United States, or by any agency or officer thereof ....

behalf of the Northern Cheyenne and other reservation tribes. In July, 1975, the Montana Department of Natural Resources and Conservation ("DNR") filed petitions in state court for a determination of all existing rights to those waters in accordance with existing state law.

In August, 1975, the United States brought suit in the district court on behalf of the Crow Tribe. Judge Battin consolidated the cases and stayed proceedings in February, 1976, pending the Supreme Court's decision in *Akin*. The State of Montana, a defendant in those cases, moved to dismiss as a result of that decision. At the same time, the Crow Tribe moved to intervene. Both motions were argued in the summer of 1976.

In February, 1979, the federal government and the tribes moved for expedited consideration. In April, 1979, the United States filed more actions in the district court seeking a declaration of water rights on behalf of the United States and four additional tribes.

On May 11, 1979, an amended state water consolidation plan, Montana Senate Bill 76, took effect. The Montana Supreme Court ordered implementation and authorized the DNR to notify relevant parties in June, 1979.

In July, 1979, Judge Hatfield stayed the federal actions initiated in 1979. In November of that year, Judges Battin and Hatfield issued a joint opinion dismissing all federal actions as an exercise of "wise judicial administration" as outlined in *Akin. Northern Cheyenne Tribe v. Tongue River Water Users*, 484 F.Supp. 31 (D.C.Mont. 1979).

The United States and the Indian tribes appeal that dismissal, arguing that it is predicated on an erroneous application of *Akin*. The Indian tribes maintain that because the Montana constitution and enabling act contain disclaimers of jurisdiction over Indian tribes, the litigation in that state differs from the Colorado litigation which was the subject of *Akin*. Further, they argue that the specific factors underlying the *Akin* decision are not present in the Montana litigation and that the contrast requires retention of federal jurisdiction.

## II. THE DISCLAIMER ISSUE.

### A. Jurisdiction over Indian Water Rights.

Traditionally, Indian water rights have been reserved in trust to the federal government. *Winters v. United States*, 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908); *Arizona v. California*, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963), *overruled on other grounds*, 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1977). Federal courts have consistently exercised jurisdiction over Indians on reservations, *Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939), unless jurisdiction is explicitly granted to the states by congressional statute. *Fisher v. District Court of Montana*, 424 U.S. 382, 388, 96 S.Ct. 943, 947, 47 L.Ed.2d 106 (1976). Congress has granted state courts jurisdiction over Indian rights with respect to various criminal and civil matters, but in each grant, jurisdiction over Indian water rights has been specifically excluded. 28 U.S.C. § 1360(b); 18 U.S.C. § 1162(b); 25 U.S.C. § 1322.[3]

In 1952, Congress passed the McCarran Amendment, 43 U.S.C. § 666, granting state courts jurisdiction over the United States when litigation involves comprehensive adjudication of water rights and the United States is a necessary party.

---

**3.** Each statutory section states:

Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, *including water rights*, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States ....

(emphasis supplied).

Sections 25 U.S.C. 1322(b) (alienation, encumbrance, taxation, use, and probate of property) and § 1360(b) (state civil jurisdiction in actions to which Indians are parties) further provide that nothing in these sections

shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit

. . . .

43 U.S.C. § 666(a). The Amendment does not mention Indians or reservations. It is limited to waiving the sovereign immunity of the federal government with respect to water rights acquired "by ... appropriation ... or otherwise." In no way does the McCarran Amendment repeal any of the jurisdiction of the federal courts. The Amendment merely extends the United States' consent to suit in certain cases.

In 1976, the Supreme Court interpreted the McCarran Amendment as a grant of jurisdiction over water rights of Indian tribes when the right is asserted by the federal government as fiduciary. *Colorado River Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (*Akin*). When the United States is a party to a proceeding involving these rights, the Court held that the ability of the state to assert jurisdiction over the federal government implicitly allows jurisdiction over the rights of tribes that, without the McCarran Amendment, would have been immunized by federal statutes against suits in state court.

In a crucial footnote, the Court noted the restrictions on jurisdiction over Indian water rights provided in 25 U.S.C. § 1322(b) and 28 U.S.C. § 1360(b).[4] *Id.* at 812, n.20, 96 S.Ct. at 1244, n.20. The Court, however, held that limiting language in those sections only qualifies the import of the general consent to state jurisdiction given by those sections; the language does not purport to limit the special consent to jurisdiction given by the McCarran Amendment. *Id.* Accordingly, the Court dismissed the

federal proceeding in favor of the comprehensive ongoing state proceeding.

**B.** *Montana's Disclaimers and Public Law 83–280.*

◼ The Montana litigation raises a question not at issue in *Akin*. In a state which, unlike Colorado, expressly disclaims jurisdiction over Indian lands within its constitution and enabling act, does the McCarran Amendment grant jurisdiction and thereby repeal the state disclaimers? We hold that it does not.

Montana was admitted to statehood in 1889 on condition that it disclaim right and title to jurisdiction over Indian lands. Montana's enabling act provides that the state "disclaim[s] all right and title to the unappropriated public lands ... owned or held by any Indian or Indian tribes ..." 25 Stat. 676 (1889). The disclaimer of title in the enabling act is reinforced by the disclaimer of jurisdiction in the Montana Constitution that specifically provides, "all lands owned or held by any Indian or Indian tribes shall remain under the absolute jurisdiction and control of the United States ...." Art. I, Mont.Const. 1972.

Only a year after the passage of the McCarran Amendment, Congress passed Public Law 83–280 establishing a procedure whereby states could repeal disclaimers in their constitutions and enabling acts. Public Law 280, "the first jurisdictional statute of general applicability to Indian reservation lands," *Washington v. Yakima Indian Nation*, 439 U.S. 463, 471, 99 S.Ct. 740, 746, 58 L.Ed.2d 740 (1979), dealt with "the problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement." *Bryan v. Itasca County*, 426 U.S. 373, 379, 96 S.Ct. 2102, 2106, 48 L.Ed.2d 710 (1953). Section 7 of that Act provides for automatic transfer of jurisdiction to the states by legislation. Section 6 deals with states which disclaim jurisdiction over Indians.

Notwithstanding the provisions of any enabling Act for the admission of a State,

---

**4.** See footnote 3, *supra.*

the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil or criminal jurisdiction in accordance with the provisions of this subchapter. The provisions of this subchapter shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes, as the case may be.

25 U.S.C. § 1324.

■ The Supreme Court held that the 1953 legislation allows assumption of jurisdiction in disclaimer states by legislative action. *Yakima, supra*, 439 U.S. at 484, 99 S.Ct. at 753. Federal law does not proscribe "the manner in which the States are to modify their organic legislation." *Id.* Accordingly, in those states which so provide, legislative action alone suffices to repeal the constitutional disclaimer of jurisdiction over Indians. *Id.* Furthermore, in enacting § 6, Congress meant to remove any federal impediments to state jurisdiction that may have been created by an enabling act. *Id.* at 488, 99 S.Ct. at 755. Hence, the determination of whether legislative action is sufficient to repeal a disclaimer depends on whether such action is sufficient under the law of the acting state to amend its constitution. *Id.* at 493, 99 S.Ct. at 757.

■ Public Law 280 was amended in 1968 to provide "that States that have not extended criminal or civil jurisdiction to Indian country can make future extensions only with the consent of the tribes affected." 25 U.S.C. §§ 1321(a), 1322(a). *See Yakima, supra*, at 494, n.40, 99 S.Ct. at 758, n.40. Hence, after 1968, a state may repeal a disclaimer of jurisdiction over reservation Indians only with the consent of the affected tribes. In addition, the scope of consent is limited to the same jurisdiction provided automatic transfer states, *i.e.*, § 7 states. 25 U.S.C. § 1322.

## C. *Analytic Framework.*

■ The McCarran Amendment overrides sovereign immunity of the United States in comprehensive water rights adjudications and the immunity of an Indian tribe represented by the government in such a proceeding. It cannot be read to amend a state constitution disclaiming subject matter jurisdiction over such matters.

■ A valid exercise of state jurisdiction requires that the state have both personal and subject matter jurisdiction. Via the McCarran Amendment, the United States has waived sovereign immunity from suit in certain cases involving water rights. In *Akin*, this waiver of sovereign immunity operated to give Colorado personal jurisdiction over the United States and implicitly allowed jurisdiction over the rights of otherwise immune Indian tribes in circumstances where the state had subject matter jurisdiction. However, when a state has chosen to disclaim subject matter jurisdiction over Indian water rights, the combination of jurisdictional prerequisites necessary for a state court to hear a challenge to Indian water rights would appear to be lacking.

■ The appearance that subject matter jurisdiction is lacking in a state court in a disclaimer state would only be defeated by a finding that the disclaimer had been validly repealed. In order to make such a finding, a court must first determine whether the Montana water consolidation plan acts as a legislative repeal of the constitutional disclaimer of jurisdiction. *Washington v. Yakima, supra*. Second, it must determine whether such repeal required tribal consent as provided in the 1968 amendment to Public Law 280. Only if the Montana water legislation is determined to constitute a legislative repeal within the requirements of the federal law will the McCarran Amendment's grant of personal jurisdiction over the United States, acting as trustee for Indian water rights, furnish the state court with the requisite personal and subject matter jurisdiction. Only if a legislative repeal is found and the

state has subject matter jurisdiction need one consult the waiver of immunity provisions of the McCarran Amendment and consequently the terms of *Akin.*

The district court made no such analysis. Instead, it determined that the disclaimer/non-disclaimer distinction was inconsequential to Congress in passing the McCarran Amendment. This conclusion cannot be accepted when viewed in light of the specific attention paid to the disclaimer/non-disclaimer distinction in P.L. 280 by Congress only a year after it passed the McCarran Amendment.

The district court's decision would rob the disclaimer/non-disclaimer distinction made by Congress of all significance and meaning, and would deprive the 1968 Amendment to P.L. 280, which requires tribal consent to a repeal of the disclaimer, of any effect. Accordingly, the district court's basis for decision was erroneous.

In so holding, we decline to follow the Tenth Circuit's decision in *Jicarilla Apache Tribe v. United States*, 601 F.2d 1116 (10th Cir.), *cert. denied*, 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979). *Jicarilla*, in considering the precise issue raised here, refused to recognize the distinction between states with constitutional disclaimers and those without. For the reasons noted above, we believe that recognition of this distinction is crucial in deciding the jurisdiction issue.

Except for *Jicarilla*, with which we expressly disagree, no case brought to our attention permits a disclaimer state to adjudicate a challenge directed against Indian water rights. Construing the Montana enabling act, *Draper v. United States*, 164 U.S. 240, 247, 17 S.Ct. 107, 109, 41 L.Ed. 419 (1896), merely held that the disclaimer in Montana's enabling act did not deprive that state of power to punish for crimes committed on a reservation or Indian lands by non-Indians.

*Williams v. Lee*, 358 U.S. 217, 218, 223, 79 S.Ct. 269, 269, 273, 3 L.Ed.2d 251 (1958), held that the State of Arizona, which expressly disclaimed jurisdiction over Indian lands, did not have jurisdiction over an action brought by a non-Indian in state court to collect a debt against an Indian and his wife. At issue in *Williams* was whether the case should be heard in tribal or state court. In holding that the case must be heard in tribal court, *Williams* explained that state jurisdiction would interfere with essential tribal relations. In the present case, the choice is between federal court and state court, not between state and tribal court; although essential tribal relations may not be involved, essential Indian rights to water, basic to the survival of tribes, are certainly at stake. An observation in *Williams* is relevant to this case. "Through conquest and treaties [Indian tribes] were induced to give up complete independence and the right to go to war in exchange for federal protection, aid, and grants of land." *Id.* at 218, 79 S.Ct. at 269. Were the State to expressly disclaim jurisdiction and the federal courts to give up their protective jurisdiction over Indian lands, including water rights, the Indians would seem deprived of the benefit of the original bargain that they were driven to make. Of course, by general statute, Congress later expressed its willingness to have any state assume jurisdiction over reservation Indians if the state legislature or the people voted affirmatively to accept such responsibility. *Id.* at 222, 79 S.Ct. at 271. To date, Montana does not appear to have accepted such responsibility.

In passing, we note that *McClanahan v. Arizona State Tax Comm'n.*, 411 U.S. 164, 179, 180, 93 S.Ct. 1257, 1266, 36 L.Ed.2d 129 (1972) (holding that Arizona could not impose an income tax on reservation Indians), has expressly limited the application of the *Williams* tribal self-government test to certain circumstances:

> It must be remembered that cases applying the *Williams* test have dealt principally with situations involving non-Indians. [citations omitted]. In these situations, both the tribe and the state could fairly claim an interest in asserting their respective jurisdictions. The *Williams* test was designed to resolve this conflict by providing that the State could protect

its interest up to the point where tribal self-government would be affected.

The problem posed by this case is completely different. Since appellant is an Indian and since her income is derived wholly from reservation sources, her activity is totally within the sphere which the relevant treaty and statutes leave for the Federal Government and for the Indians themselves. Appellee cites us to no cases holding that this legislation may be ignored simply because tribal self-government has not been infringed.

Similarly, in the present case, we do not believe that the enabling act, the Montana constitution, P.L. 280, and its 1968 amendment can be overlooked simply because tribal self-government has not been infringed. Unlike *Williams*, but like *McClanahan*, the present case is not one that presents as a central issue, a choice between tribal and state jurisdiction; therefore, the *Williams* test has no application whatsoever to the present situation.

*Kake Village v. Egan*, 369 U.S. 60, 75, 82 S.Ct. 562, 570, 7 L.Ed.2d 573 (1962), held that a disclaimer state could regulate the fishing of off-reservation Indians by enforcing against non-reservation Indians a state statute forbidding the use of salmon traps. Referring to *Kake, White Mountain Apache Tribe v. Arizona*, 649 F.2d 1274, 1280 (9th Cir. 1981), which held that a disclaimer state is not precluded from imposing fishing and hunting license fees on non-Indians on a reservation, noted that the enabling acts do not force states to disclaim governmental or regulatory authority over Indian lands. We believe that *Jicarilla, supra,* went too far by relying on the distinction between proprietary and governmental functions drawn in *Kake* and *White Mountain Apache Tribe.* All that the latter two cases recognize is that a state may have a strong governmental interest that empowers it to regulate certain limited conduct concerning non-reservation Indians or non-Indians on reservations. Neither *Kake* nor *White Mountain Apache Tribe* permits a state court to decide how much water reservation Indians may take for use on their reservations.

The present case is not about fishing traps or licenses. More is at stake here than the mere power of a state legislature to regulate the use of fishing traps, where the power to regulate may have a secondary effect on Indian fishing rights; instead, the right of Indians to the water itself is at issue. The power of a court in a disclaimer state to enforce a regulatory statute that may adversely affect Indians falls far short of the power to adjudicate a direct challenge to Indian water rights in and to the waters of streams. A disclaimer state cannot assert jurisdiction over such matters until Indian sovereign immunity has been waived and the state has repealed its disclaimer. Unless the state effectively repeals its disclaimer, it cannot hear this matter.

## III. THE *AKIN* FACTORS.

Even if we were to find that Montana had validly repealed the disclaimer language in its constitution, we would nonetheless be compelled to reverse the decision below. The limited factual circumstances of *Akin* prevent its application to the Montana litigation. Noting the virtually unflagging obligation of the federal courts to retain jurisdiction, the *Akin* Court held that principles of "wise judicial administration," *Akin, supra,* at 817, 96 S.Ct. at 1246, required dismissal given the "exceptional circumstances" of that case. *Id.* at 818, 96 S.Ct. at 1246. In the instant case, no exceptional circumstances mandate dismissal in the exercise of wise judicial administration.

The "exceptional circumstances" requiring dismissal in *Akin* included the following: Colorado had an extensive ongoing water plan in which the United States had participated. Colorado is not a disclaimer state. The federal government sued in federal court on behalf of several Indian tribes under 28 U.S.C. § 1345. During the pleading stage the federal court dismissed in favor of the ongoing state proceeding. The suit by the United States in federal court involved one small division of the state plan while the state proceeding was comprehen-

sive. The Indians involved did not receive water rights by treaty. Nor did the Court find that the United States faced a conflict of interest in representing its various interests.

The Court noted in its decision (a) the apparent absence of any proceedings in the district court other than the filing of the complaint, (b) the extensive involvement of the state and state water rights, (c) the inconvenience of the federal forum's 300-mile distance from the location of the dispute and (d) the existing participation by the Government in the state proceeding. *Id.* at 820, 96 S.Ct. at 1247. Further, it noted that the federal forum must defer to the state where both have concurrent jurisdiction and the state action preceded the federal.

In limiting its holding, the Court stated: "[W]e do not overlook the heavy obligation to exercise jurisdiction. We need not decide . . . whether, despite the McCarran Amendment, dismissal would be warranted if more extensive proceedings had occurred, . . . if the involvement of state water rights were less extensive . . ., or if the state proceedings were in some respect inadequate to resolve the federal claims. . . .," *id.* at 820, 96 S.Ct. at 1247, or if the suit were "brought by a private party," *id.* at n.26. The Montana litigation is sufficiently different from that in *Akin* to require the district court to accept its "virtually unflagging obligation" to entertain jurisdiction.

 Before considering the factors discussed in *Akin*, we note that under the heading "wise judicial administration," the district court included limited federal resources as a reason for leaving adjudication to the state courts. *Northern Cheyenne Tribe, supra,* at 36. It is a well established point, however, that conservation of federal judicial resources is not a proper reason for dismissing a case from the federal courts. An action properly filed in district court is not to be dismissed or referred to state court simply because the district court con-

siders itself too busy to try the action. *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 344, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1975). Shortages of judicial manpower are indeed unfortunate where they occur; however, it is not wise judicial administration for a federal court to shirk its responsibility to hear federal questions just because the court may not be able to dispatch the case as quickly as it may want to.

**A. Stage of the Proceedings.**

*Akin* involved a completed proceeding which had been in the adjudication process for years. Furthermore, the federal action in *Akin* involved only one section of the state; the United States was already a party in state proceedings in other water divisions. Finally, *Akin* did not involve allegations that the United States would be subject to conflicts of interests in representing its varied interests along with tribal interests.

In contrast, the Montana state court litigation has not passed the notice stage. The comprehensive plan envisioned by Montana was not enacted until four years after the first federal suit was filed. Claims to all water rights under the plan will not be complete until 1982. In addition, though the federal litigation is no further along than the state litigation, the district courts stayed proceedings, apparently awaiting the state legislation.

**B. Comprehensiveness.**

*Akin* involved a truly comprehensive proceeding in state court with a concurrent piecemeal proceeding in federal court. Montana claims that a federal proceeding in the Montana case will be piecemeal because the federal courts have been unable to obtain jurisdiction over all defendants due to the in personam nature of the case. Further, Montana points out that the federal proceeding excludes the Missouri River and other important water bodies within the

state. The federal action is limited to claims in which the United States owns a reserved water right. As to the actions that took place, the state claims that federal notice to affected parties was inadequate.

The Tribes counter that the state proceeding will be piecemeal because Indian allottees may not be joined. They also claim that the state proceeding is inadequate as it adjudicates only claims accruing after 1973 and excludes claims for livestock purposes. The state asserts that the exempted water rights involve a minimal amount of water. The district court does not explain the basis for its conclusion on the issue of comprehensiveness; nor did it make findings regarding the Tribes' claims.

The Tribes argue that even if all parties could be joined in the state proceeding, the federal court could adopt state joinder procedures and appoint special masters to implement the federal proceeding. They correctly stress that *Akin* only required dismissal where the federal proceeding would be piecemeal *and* the state proceeding is comprehensive. Where that is not the case and jurisdiction is concurrent, the federal court may not abdicate its judicial obligations.

### C. The Race to the Court.

In *Akin*, state proceedings were ongoing when the federal action was filed. In Montana, the federal proceeding was the predecessor. This factor is not determinative, however, as both proceedings are in their infancy.

### D. Forum Non Conveniens.

*Akin* relied on factors suggestive of a forum non conveniens analysis. Distance was a major consideration as the federal proceeding was 300 miles from the water district in question. The court relied on difficulty to the parties in travelling to the location. That factor is not present in this case to encourage dismissal.

### E. Conflicts of Interest.

In any state litigation, the United States must represent the water rights of all tribes as well as those of the Bureau of Land Management, the U. S. Forest Service, and other federal entities. The Tribes argue that conflicts among these interests would prevent the United States from representing them adequately. When the United States is faced with such a conflict, its representation of Indians is inadequate. *Manygoats v. Kleppe,* 558 F.2d 556, 558 (9th Cir. 1972). Hence, the Tribes claim the Indians would be necessary parties over whom the state court has no jurisdiction.

The Tribes further argue that the result in *Akin* was limited to a situation in which the United States could effectively represent all of its diverse rights because of the limited scope of the proceeding. In contrast, the Montana litigation involves all water rights in the state. The McCarran Amendment is complied with only when the inclusion of the United States as a necessary party will provide complete adjudication of all issues. *Akin, supra,* at 819, 96 S.Ct. at 1247.

The state, relying on *Jicarilla,* argues that the Indians' right to intervene in court proceedings sufficiently protects their interests. However, we are reluctant to follow *Jicarilla* on this point for two reasons. First, it is unclear that the tribes have a right to intervene; if the state has disclaimed personal jurisdiction over the Indians, then they may not have that right. Whether the state disclaimer provisions reach so far is a question of state law that we need not and do not reach. Second, apart from any possible state disclaimer of personal jurisdiction, Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by sovereign powers; without express waiver of sovereign immunity, an Indian tribe cannot be sued. *Santa Clara*

*Pueblo v. Martinez,* 436 U.S. 49, 58–59, 98 S.Ct. 1670, 1676–1677, 56 L.Ed.2d 106 (1979). In the present case, the Indian tribe appears to be a necessary party to the state court proceeding, yet neither Congress nor the Tribe has consented to such a suit in state court. Under these circumstances, where the sovereign immunity of the Tribe has not been waived, and there is a conflict of interest between the Tribe and the United States, the Tribe could only protect its rights by intervening, at the expense of its basic right to sovereign immunity. We will not put the Tribe to this Hobson's choice.

Thus, the instant case is unlike the *Akin* case, in which the Tribe was not a necessary party and the United States, as trustee to the Indians' water rights, could apparently act as trustee without conflict of interest. Our examination of this conflicts factor leads us to conclude that it would not be wise or appropriate for the federal court to give up its traditional jurisdiction and defer to the state court in this case.

#### F. *Jurisdiction under 28 U.S.C. § 1362.*

The Montana litigation involves petitions by Indian tribes pursuant to 28 U.S.C. § 1362. That section, enacted in 1966, authorizes suits by tribes in federal courts without the $10,000 amount in controversy requirement.

In *Akin,* the Supreme Court dismissed a suit brought by the federal government pursuant to 28 U.S.C. § 1345, authorizing the United States to sue in federal court. The Court declined to decide whether dismissal would have been appropriate had suit been brought by a private party. 424 U.S. at 820, n.26, 96 S.Ct. at 1247, n.26.

If this court were to further extend *Akin* in the Montana case to a suit brought by an Indian tribe, the result could prevent Indians from fully litigating their rights to water in federal court. Each time a tribe sued in federal court, the state need only join the United States as a party to obtain dismissal of the federal action. It is con-trary to all reason to permit the states to frustrate federal jurisdiction merely by joining the United States as a party.

### IV. CONCLUSION.

The Supreme Court has expressly and repeatedly noted the obligation of federal courts to retain jurisdiction in all but the most exceptional of circumstances.

The circumstances of the Montana litigation are sufficiently distinct from the factors warranting exceptional treatment in *Akin.* The conflicts of interest present, the embryonic stage of state and federal proceedings, and the procedural status of the Montana case favor retention of federal jurisdiction. Accordingly, we reverse.

### V. THE CROW TRIBE APPEAL.

The Crow Tribe moved to intervene in the district court. The district court refused to rule on the motion, instead dismissing the action with the rest. To the extent that the court's action was a de facto denial of the motion, the tribe should be permitted to intervene in the interest of avoiding piecemeal litigation.

The judgment of the district court is REVERSED.

MERRILL, Circuit Judge, dissenting:

I dissent from the Court's holding that the disclaimer clauses in the Montana Statehood Act and in the State Constitution deprive the state courts of jurisdiction to establish and adjudicate reserved water rights of the United States held by it in trust for the Indians. On this issue I agree with *Jicarilla Apache Tribe v. United States,* 601 F.2d 1116 (10th Cir.), *cert. denied,* 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979).

The disclaimer clauses disclaim all right and title to Indian lands. But no one here lays any claim to Indian lands or water rights. The Statehood Act disclaimer provides that Indian lands "shall be and remain subject to the disposition of the United States, and * * * shall remain under the

absolute jurisdiction and control of the Congress of the United States." 25 Stat. 676 (1889). But no one here disputes that Congress has always had jurisdiction and control over land owned by the United States and held by it in trust for Indians and that such lands always remained subject to disposition by Congress. Indeed, in enacting the McCarran Amendment, 43 U.S.C. § 666, Congress exercised its plenary control over Indian lands to authorize the states to adjudicate, as part of general stream adjudications, the federal reserved water rights of Indians. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (*"Akin"*). The sole question then, as I see it, is whether the language "absolute jurisdiction and control of the Congress" is to be construed to mean *exclusive* jurisdiction of the federal courts in all suits involving Indian lands or property rights. In holding that that is not the meaning to be attributed to the language, *Jicarilla* followed *Organized Village of Kake v. Egan*, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962), where the Supreme Court held to that effect.

In that case, under the Alaska Statehood Act, the United States retained "absolute jurisdiction and control" over Indian property. The property in question was Indian fishing rights and the issue was the right of Alaska to regulate the Indian use of salmon traps. Speaking for the Court, Justice Frankfurter concluded from the Court's decisions in *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1946), and *Draper v. United States*, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896), that " 'absolute' federal jurisdiction is not invariably exclusive jurisdiction." 369 U.S. at 68, 82 S.Ct. at 567. "[A]n examination of past ... decisions makes clear," he wrote, "that the words 'absolute jurisdiction and control' are not intended to oust the State completely from regulation of Indian 'property (including fishing rights).' " *Id.* at 71, 82 S.Ct. at 568. He concluded, "These decisions indicate that even on reservations state laws may be applied to Indians unless such application would interfere with reservation self-government or impair a right granted or reserved by federal law." *Id.* at 75, 82 S.Ct. at 570.

To the same effect is this Court's recent decision in *White Mountain Apache Tribe v. Arizona*, 649 F.2d 1274 (9th Cir. 1981). We there cited the *Organized Village of Kake* and *Jicarilla* decisions for the proposition that the "Enabling Acts themselves forced states to disclaim only their proprietary interest in Indian land, not the states' governmental or regulatory authority over that land." 649 F.2d at 1280.

If the disclaimers are no bar to state regulation of Indian property rights where those rights confront legitimate state interests, the McCarran Amendment, as discussed in *Akin*, makes it clear that state courts are vested with jurisdiction in the adjudication of Indian water rights.

*McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), is not to the contrary. There, in holding that Arizona was without jurisdiction to impose on reservation Indians a tax on income derived from reservation sources, the Supreme Court described the tribal interest at issue as "totally within the sphere which the relevant treaty and statute leave for the Federal Government and for the Indians themselves." *Id.* at 179–180, 93 S.Ct. at 1266. Here, in stark contrast, the McCarran Amendment actually authorizes the states to adjudicate as part of comprehensive stream adjudications the federal reserved water rights of Indians. "The consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights...." *Akin, supra*, 424 U.S. at 819, 96 S.Ct. at 1247.

Further I dissent from the Court's holding that wise judicial administration, as that term is used in *Akin*, does not call for dismissal of the federal suits. The district court dealt at length with the special circumstances presented by this case, taking

note of Montana's detailed water use legislation. *See* 484 F.Supp. at 35–36. Pursuant to that legislation, the Montana Supreme Court has filed an order requiring all persons claiming a water right within the state to file a statement of that claim with the State Department of Natural Resources and Conservation. These claims will be referred to water judges appointed in each of the state's four water divisions who shall enter a preliminary, and after an opportunity for hearing, a final comprehensive water decree.

The district court concluded:

It is clear that the adjudication contemplated by the Bill is both comprehensive and efficient. As the general adjudication has been initiated by recent order of the Montana Supreme Court, it would seem that the greater wisdom lies in following *Colorado River,* and, on the basis of wise judicial administration, deferring to the comprehensive state proceedings. The federal proceedings are all in their infancy; service of process has been but recently completed. The state adjudication is thorough, as opposed to the piecemeal proceedings initiated by the Government. There is no jurisdictional question preliminarily attending the state adjudication; all such questions have been eliminated by the McCarran Amendment. The state forum will likely be more convenient, geographically, than the federal forum. The amount of time contemplated for completion of the state adjudication is significantly less than would be necessary for federal adjudication, insofar as the state has provided a special court system solely devoted to water rights adjudication. The federal judicial resources in Montana are limited; continued exercise of federal jurisdiction over the pending adjudications would either exhaust or severely deplete those resources for a substantial number of years, just by virtue of the number of parties involved. (In these cases, there are approximately 9,000 defendants.) The possibility of conflicting adjudications by the concurrent forums also looms large and could be partially avoided only by staying the pending state adjudication, an action *Colorado River* has intimated is distinctly repugnant to a clear state policy and purpose.

484 F.Supp. at 36. Accordingly, "on the basis of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," the court ordered the cases dismissed. *Id.*

I agree with the district court. Water adjudication is essentially a local concern, and in every western state water scarcity poses a problem not just to Indians but to everyone. In my view, it is highly important that each state be accorded room for an effort to solve its water scarcity problem in the manner it regards as most appropriate. Here so long as Montana gives recognition to Indian water rights and their establishment pursuant to federal law, I see no good reason why Indians should not be joined with all other water users in the state in order to achieve a comprehensive state adjudication.

I would affirm.