WREN v. YATES
2022 OK 88
Case Number: 119642
Decided: 11/08/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 88, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

CHELSEY ANN WREN, Plaintiff/Appellee,
v.
ROBERT LEE YATES, Defendant/Appellant.
ORDER OF SUMMARY DISPOSITION
¶1 Rule 1.201 of the Oklahoma Supreme Court Rules provides that "[i]n any case in which it appears that a prior controlling appellate decision is dispositive of the appeal, the court may summarily affirm or reverse, citing in its order of summary disposition this rule and the controlling decision." Okla. Sup. Ct. Rule 1.201.
¶2 After reviewing the record in this case, THE COURT FINDS that its decision in Milne v. Hudson, , __ P.3d __, involves the same primary legal questions as those in this appeal. Our holding in Milne disposes of the issue raised here.
¶3 IT IS THEREFORE ORDERED that the trial court's order issuing a Final Order of Protection against Appellant Yates is AFFIRMED.
DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THE 7th day of November 2022.
/s/CHIEF JUSTICE
CONCUR: KANE, V.C.J., AND KAUGER, WINCHESTER, EDMONDSON, COMBS (by separate writing), ROWE AND KUEHN, JJ.
CONCUR IN RESULT: DARBY, C.J. (by separate writing)
CONCUR IN JUDGMENT: GURICH, J. (by separate writing)

Darby, C.J, concurring in result:
¶1 I concur in the Court's judgment, but disapprove of the majority's use of Oklahoma Supreme Court Rule 1.201 to resolve the decision by summary disposition. Appellate decisions by summary disposition should only be utilized in circumstances when the prior controlling appellate decision is dispositive of the appeal. See e.g., McBee v. Fraire, , . Milne v. Hudson, , ___ P.3d ___ is not dispositive because the issue of jurisdiction in this case, and others like it, is factually driven. Here we have parties with different or unknown tribal statuses, and potentially very different locations from that in Milne--one county was completely included within recognized reservations and the other is not. These cases demand precise determinations as to each parties' status, the location of relevant events, and the existence and/or interplay of tribal law on the relevant subject matter with that of state and federal law. At the very least, this Court's majority opinion should provide the relevant background and affirm by Okla. Sup. Ct. R. 1.200(b), affirmance by memorandum opinion.
¶2 I also reiterate my understanding that federal jurisprudence requires a comprehensive understanding of the facts in each case to appropriately evaluate tribal or state jurisdiction when there is no clear preemption. Milne v. Hudson, , ¶¶ 11-12, ___ P.3d ___ (Darby, C.J., concurring). As stated in my concurring opinion in Milne v. Hudson, , ___ P.3d ___, jurisdictional challenges between the State of Oklahoma and Tribal Nations must be reviewed on a fact-specific, case-by-case determination. Ibid., ¶ 1, ___ P.3d ___ (Darby, C.J., concurring) (citing Williams v. Lee, 358 U.S. 217, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959); Strate v. A-1 Contractors, 520 U.S. 438, 117 S. Ct 1404, 137 L. Ed. 2d 661 (1997); Montana v. United States, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981); Fisher v. District Court of Sixteenth Judicial District of Montana, in and for Rosebud County, 424 U.S. 382, 96 S. Ct. 943, 47 L. Ed. 2d 106 (1976)). The majority disregards decades of well-settled precedent in concluding that the Indian/non-Indian and member/nonmember status of a party does not matter with respect to questions of jurisdiction. See Majority Op., ¶ 2 n.1. Obviously these factual distinctions do matter. See Williams, 358 U.S. 217, 222 (Defendant's status as member Indian was significant for recognizing exclusive tribal jurisdiction); Fisher, 424 U.S. 382 (member Indian status of all parties involved was significant to finding tribal court had exclusive jurisdiction); Montana, 450 U.S. 544; (the location and status of persons was significant; the tribe was unable to regulate hunting and fishing of non-Indian persons on non-Indian fee land within reservation borders), Washington v. Confederated Tribes of Colville Reservation, 447 U.S. 134, 100 S. Ct. 2069, 65 L. Ed. 2d 10 (1980) (status as a member or nonmember Indian was significant; state had jurisdiction to tax nonmember Indians in reservations). See also, Duro v. Reina, 495 U.S. 676, 110 S. Ct. 2053 109 L. Ed. 2d 693 (1990) (Indian tribal court did not have inherent criminal jurisdiction over nonmember Indian); Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S. Ct. 1011, 55 L. Ed. 2d 209 (1978) (Indian tribal courts do not have inherent jurisdiction to punish non-Indians.).
¶3 In this case, Justice Gurich's concurring opinion recites the relevant facts available from the record on appeal. As she has already done so, we find it unnecessary to repeat the facts here. Because the state district court's exercise of jurisdiction is not preempted by federal law, and does not infringe on the Chickasaw Nation's right to govern themselves, the district court's exercise of jurisdiction was proper. See Milne v. Hudson, , ¶ 2, ___ P.3d. ___ (Darby, C.J., concurring). Consequently, the district court order must be affirmed.
FOOTNOTES
 In Milne, the challenge was to the jurisdiction of the McIntosh County District Court. McIntosh County is in "Indian country." 18 U.S. C. § 1151 (2018). McIntosh County is not completely within the boundary of one reservation, but is within the boundary of two recognized reservations--the Creek and the Cherokee reservations.
 In this case, the challenge is to the jurisdiction of the Stephens County District Court. Stephens County is not completely "Indian country," only part of it lies within Indian country because only part of Stephens County is within the external boundaries of the Chickasaw reservation.

COMBS, J., with whom KAUGER, J., joins, concurring specially:
¶1 As with Milne v. Hudson, , --- P.3d ---, this case comes down to the plain language of the state statute and the tribal statute, neither of which conditions the issuance of a protective order upon the parties' status as Native American or non-Native American. The state statute provides:

§ 60.2 Protective order--Petition--Complaint requirement for certain stalking victims--Fees
A. A victim of domestic abuse, a victim of stalking, a victim of harassment, a victim or rape, any adult or emancipated minor household member on behalf of any other family or household member who is a minor or incompetent, or any minor age sixteen (16) or seventeen (17) years [to] seek relief under the provision of the Protection from Domestic Abuse Act.
1. The person seeking relief may file a petition for a protective order with the district court in the county in which the victim resides, the county in which the defendant resides, or the county in which the domestic violence occurred. . . .

 (amended 2022). Similarly, the tribal statute provides:

SECTION 5-1201.2 PROTECTIVE ORDER; PETITION
A. The [tribal] Court shall have full civil jurisdiction to issue and enforce Protective Orders involving any person in matters arising in the Indian Country of the Chickasaw Nation or otherwise within the authority of the Court. 
B. The following persons may seek relief under the provision of this Section by filing a petition for Protective Order with the Court:
1. any victim of Domestic Abuse who is age sixteen (16) years or older;
2. any victim of Stalking who is age sixteen (16) years or older;
3. any victim of Harassment who is age sixteen (16) years or older; or
4. any adult or emancipated Child who is a Family or Household Member of a victim who is a Child or incompetent, on behalf of such victim.
. . . .

Chickasaw Nation Code § 5-1201.2 (last amended Feb. 22, 2021), https://code.chickasaw.net/Title-05.aspx (emphasis added). Only the location of the offending conduct or the location of one party's residence matters. Where that location can be classified as both state and tribal territory, both courts have jurisdiction--that is, concurrent jurisdiction--to issue a protective order.

Gurich, J., concurring in judgment:
¶1 As with my separate writing in Milne v. Hudson, , __P.3d__, I believe the majority opinion reaches the correct conclusion in this proceeding. Nevertheless, I believe the decision should be limited by its unique facts. Additionally, because the majority summary opinion does not provide necessary background, and every jurisdictional dilemma involving Indian country is dependent on its particular circumstances, I have outlined the pertinent case history below.
¶2 Robert Lee Yates is an enrolled member of the Caddo Nation of Oklahoma and a resident of the Chickasaw Nation Reservation. On March 16, 2020, Yates was charged with two counts of child sexual abuse in Stephens County District Court, Case No. CF-2020-57. Defense counsel filed a motion to dismiss, alleging the state court lacked jurisdiction because (1) Yates was an Indian; (2) the alleged criminal acts took place within the boundaries of the Chickasaw Nation Reservation; and (3) the United States had exclusive jurisdiction under the Major Crimes Act. On April 1, 2021, the trial court dismissed the State's criminal case based on the Supreme Court decision in McGirt v. Oklahoma. Subsequently, Wren initiated a civil proceeding in Stephens County District Court, requesting issuance of a protective order on behalf of her daughter. Yates filed another motion to dismiss, this time arguing the state court lacked jurisdiction to proceed with any civil matter involving an Indian for acts in Indian country. During oral argument before the trial judge, counsel maintained that exclusive jurisdiction over the matter should lie in either the Chickasaw Nation Tribal Court or the Court of Indian Offences. Similar to the facts in Milne v. Hudson, we are faced with acts by a non-member Indian which occurred within Indian country, as defined by 18 U.S.C. § 1151. However, there is nothing in the record to indicate that Wren or her daughter are Indian.
¶3 As a general rule, state courts lack jurisdiction for acts involving member Indians within Indian country absent an express grant of authority from Congress. See, e.g., Williams v. Lee, 358 U.S. 217, 220-21, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) ("Congress has also acted consistently upon the assumption that the States have no power to regulate the affairs of Indians on a reservation. . . . Significantly, when Congress has wished the States to exercise this power it has expressly granted them the jurisdiction which Worcester v. State of Georgia had denied"). When assumption of jurisdiction by the state over reservation transactions serves to undermine the power of tribal courts or infringes on tribal self-governance, it is impermissible. Id. at 223. A state's authority is at its lowest and generally inapplicable when applied to on-reservation conduct of tribal members. White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 144, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980). Whether a state may assert authority over the on-reservation activities of non-members presents a more difficult question. "While under some circumstances a State may exercise concurrent jurisdiction over non-Indians acting on tribal reservations, such authority may be asserted only if not preempted by the operation of federal law." New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 333, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (internal citation omitted).
¶4 The fundamental questions we must ask in any dispute involving application of state law in Indian country are: (1) whether the exercise of jurisdiction by an Oklahoma state court would infringe on a tribe's right to make its own laws and be ruled by them; and (2) whether the exercise of jurisdiction by a state court is preempted by operation of federal law. Bracker, 448 U.S. at 142-43. These two barriers are independent, and either "standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members." Id. at 143.
¶5 As to the first question, exercise of jurisdiction by the Stephens County District Court in this case would not substantially infringe on the right of the Chickasaw Nation or Caddo Nation to govern themselves. To determine if state law would constitute an infringement on tribal self-governance, courts have utilized a three-part examination--who are the parties involved (Indian, non-Indian, or non-member Indian); where did the civil action arise (Indian country vs. state lands); and what is the subject of the dispute. Chino v. Chino, 90 N.M. 203, 206, 561 P.2d 476, 479 (N.M. 1977) (criteria relevant to the infringement test are: "(1) whether the parties are Indians or non-Indians, (2) whether the cause of action arose within the Indian reservation, and (3) what is the nature of the interest to be protected") (citation omitted).
¶6 Neither Wren nor Yates is a member of the Chickasaw Nation, and the minor child victim is not an Indian child. Under the infringement test, tribal courts ordinarily have exclusive jurisdiction when either: (1) a non-Indian or non-member asserts a claim against an Indian for conduct occurring on that Indian's reservation; or (2) parties to the suit are members of the same Indian tribe and the subject of the action involves conduct occurring on the members' reservation. See Roe v. Doe, 2002 ND 136, ¶ 8, 649 N.W.2d 566, 569 (citing Fisher v. Dist. Ct. of Sixteenth Jud. Dist. of Mont., 424 U.S. 382, 387-89, 96 S.Ct. 943, 947, 47 L.Ed.2d 106 (1976) and Williams, 358 U.S. at 223). Indian tribes also have "exclusive jurisdiction over wholly internal tribal subject matter, such as membership disputes, divorce actions between members domiciled on the reservation, and certain probate actions." Id. The Chickasaw Nation has its own laws and court system designed to protect victims of domestic violence. Under the Chickasaw Nation Code, the Tribal District Court may issue a protective order in favor of any person which stems from conduct on Indian country of the Chickasaw Nation. CNC § 5-1201.2(A). This tribal enactment is expressly authorized through congressional delegation under the Violence Against Women Act (VAWA). Despite ostensibly having the power to issue a protective order in this case, the Chickasaw Nation has no real interest in the outcome other than the alleged sexual assault occurred within the Tribe's Reservation. Because the proceeding does not involve a member Indian or encroach on the Tribe's right to govern itself, the exercise of concurrent state court jurisdiction in this case does not infringe on the Chickasaw Nation's sovereignty.
¶7 We must also examine whether Oklahoma's exercise of jurisdiction in this case is preempted. In Mescalero Apache Tribe, the Supreme Court noted, "[s]tate jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the State interests at stake are sufficient to justify the assertion of State authority." 462 U.S. at 334. Concepts of sovereignty over a tribe's reservation and members "must inform the determination whether the exercise of state authority has been pre-empted by operation of federal law." Bracker, at 143. Additionally, an express congressional statement of preemption is not required. Id. at 144 (citing Warren Trading Post Co. v. Arizona Tax Comm'n, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965)). As I explained in Milne, to properly evaluate whether state jurisdiction is preempted, I would consider the matter in light of the Enabling Act of 1906, Public Law 280, Okla. Const. art I, § 3, and VAWA. I do not believe VAWA preempts Stephens County from assuming jurisdiction in this case; instead it removes any question regarding a tribal court's authority to issue an enforceable protective order when the tribe otherwise has jurisdiction over the parties and subject matter. Preemption, when considered in light of P.L. 280, the Enabling Act of 1906, treaties between tribes and the U.S., and the Oklahoma Constitution, elicits a more difficult debate. See Okla. v. Castro-Huerta, ___ U.S. ___, 142 S.Ct. 2486, 213 L.Ed.2d 847 (2022) (Gorsuch, J., dissenting). Yates addressed P.L. 280 in his appellate brief; however, he did not raise it in either his motion to dismiss or during oral argument before the trial judge. Further, Yates did not raise preemption under Bracker in either the trial court of this appeal. Consequently, I am not inclined to examine the preemption issue in this appellate proceeding. See Bane v. Anderson, Bryant & Co., , ¶ 24, , 1236 ("Parties will not be permitted to raise issues before this court which were not raised in the trial court").
FOOTNOTES
 Nothing in our record definitively establishes that the alleged criminal acts occurred within the boundaries of the Tribe's Reservation. Much of Stephens County lies within the Reservation, however, a small portion of the county lies outside the exterior boundary. For purposes of this writing, I will assume the claimed transgressions took place on the Reservation. In his motion to dismiss, Yates claimed to reside within the Chickasaw Reservation; however, the petition for a protective order suggests Yates resided with Wren and her child at the time of the alleged criminal acts. An address for Yates is listed on the petition, but nothing indicates whether it was acquired after the alleged sexual assault.
 Codified at 18 U.S.C. § 1153, the MCA provides that the United States has exclusive jurisdiction for certain criminal offenses if committed by an Indian within Indian country.
 591 U.S. ___, 140 S.Ct. 2452, 2482, 207 L.Ed.2d 985 (2020) (holding criminal acts by Indian on the Muscogee (Creek) Reservation fell under the Major Crimes Act and were under exclusive jurisdiction of the federal government); see also 18 U.S.C. §§ 1151 and 1153.
 Courts of Indian Offences "operate where Tribes retain jurisdiction over American Indians that is exclusive of state jurisdiction, but where Tribal courts have not been established to fully exercise that jurisdiction." (https://www.bia.gov/CFRCourts). These courts have the authority to issue civil protective orders. 25 C.F.R. § 11.116; https://www.bia.gov/regional-offices/southern-plains/court-indian-offenses, (Protective Order Form Packet PDF).
 Historically, issues pertaining to Indian jurisdiction "were conceptually drawn around only two categories of individuals: Indians and non-Indians." Pommersheim, Frank, The Crucible of Sovereignty: Analyzing Issues of Tribal Jurisdiction, 31 Ariz.L.Rev. 329, 355 (1989). Court decisions, however, have identified a third category of persons who impact the requisite jurisdiction analysis--non-member Indians (those individuals who meet the definition of Indian, but who are not members of the tribe where the civil transaction arose). Id.
 It is my belief that the majority in Milne gave undue weight to cases such as Montana v. United States, 50 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), United States v. Cooley, 593 U.S. ___, 141 S.Ct. 1638, 210 L.Ed.2d 1 (2021), and Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001). Although seminal decisions in federal Indian law, they provide very little guidance to the issue presented in this case because each dealt with whether a tribe lacked jurisdiction to act.
 See also Jackson County By and Through Child Support Enforcement Agency ex rel. Jackson v. Swayney, 319 N.C. 52, 352 S.E.2d 413, 417-18 (N.C. 1987); O'Connell v. Hamm, 267 N.W.2d 839, 841 (S.D. 1978).
 Chickasaw Nation Code, title 5, ch. 12 (§§ 5-1201.1 to 5-1201.10).
 Pub.L. 103-322, Title IV, § 40221(a), Sept. 13, 1994, 108 Stat. 1930 (amended by PL 106--386, October 28, 2000, 114 Stat 1464); Violence Against Women Act Reauthorization Act of 2022 (VAWA), Pub. L. No. 117-103, 136 Stat. 49.
 In Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), the Supreme Court found that tribes and states enjoy concurrent jurisdiction to tax non-members and non-Indians, and that a state's imposition of taxes was neither preempted by federal law nor an infringement on tribal sovereignty. Id. at 155-156, 161; see also Wacondo v. Concha, 117 N.M. 530, 873 P.2d 276 (N.M. Ct. App. 1994) (New Mexico Court of Appeals found the state district court had concurrent jurisdiction to hear a civil dispute occurring on the Jemez Pueblo between member Indian plaintiffs and non-member Indian defendant).
 Even if state jurisdiction is not expressly preempted, it may nevertheless be prohibited under the Bracker balancing test. Video Gaming Tech., Inc. v. Rogers Cnty. Bd. of Tax Roll Corr., , ¶¶ 27, 43, 475 P.3d 824, 830-31, 834 (applying Bracker test to conclude a county ad valorem tax preempted).
 Act of Aug. 15, 1953, Pub. L. No. 83-280, 67 Stat. 588.
 18 U.S.C. § 2265(b) & (e). As we know from Montana and its progeny, tribal court authority over non-members and non-Indians has routinely been a subject of uncertainty.
 Congress conditioned Oklahoma's admission to the Union by requiring a repudiation of any interest over tribal lands and a concession that tribal lands "remain subject to the jurisdiction, disposal, and control of the United States." See Enabling Act of 1906, June 16, 1906, 34 Stat. 267, 270. Oklahoma obliged by including a constitutional provision, disclaiming jurisdiction over Indian territories in favor of the United States. Okla. Const., art I, § 3. Public Law 280 was a 1953 federal law, which vested certain states with jurisdiction to adjudicate civil and criminal matters for acts involving Indians occurring within Indian country. P.L. 280 was amended in 1968 to require tribal consent before additional states could exercise jurisdiction over Indian country within their borders. Act of Apr. 11, 1968, § 401, 82 Stat. 78, 80, § 406 (25 U.S.C. §§ 1322(a), 1326). To facilitate the implementation of P.L. 280, Congress also included a provision in the 1968 amendment, which bestowed states with the power to "amend, where necessary, their State constitution or . . . statutes." § 404, 82 Stat. 79 (25 U.S.C. § 1324). This section further noted that until states "appropriately amended their State constitution or statutes," they could not assume jurisdiction under P.L. 280. Id. Oklahoma has neither amended its constitution in conformity with P.L. 280 nor obtained tribal consent to assume jurisdiction over tribal lands. If Oklahoma has inherent authority to exercise concurrent jurisdiction in Indian country it is certainly plausible to question whether the passage of P.L. 280 (and its amendments) was in vain. Now if we also consider the aforementioned limitations together with the various treaties entered between tribes and the United States (treaties which assured Indians they would be free from state jurisdiction), it becomes increasingly apparent why application of state law in Indian country might offend tribal sovereignty. See Treaty of Pontotoc Creek, Oct. 20, 1832 Preamble; Treaty of Dancing Rabbit Creek, Sept. 27, 1830, Preamble, Art. IV, 7 Stat., 333; Treaty with the Cherokee, Preamble. Art. 5, Dec. 29, 1835, 7 Stat. 478.